BaeNey, J.,
delivered the opinion of the court.
The only question in this case for decision is the interpretation to be given to the words “handling and storing,” contained in section 1186 of the Postal Laws and Begula-tions, such regulations being a part of the contract between the parties to this suit.
It is the contention of the plaintiff that the words quoted mean only the storing of the mail pouches as they arrive at the depot waiting for transfer upon a different route and the necessary handling of such pouches in bulk and unbroken, and do not include space for the sorting and distributing of mails as they arrive at the depot over different routes, which would, of course, make necessary conveniences for the opening of the mail pouches, cases, racks, and other appurtenances.
On the other hand, it is contended by the defendants that the conveniences at depots for the sorting and distribution of mails in transit, as they arrive over different routes, is but a necessary part of the transportation of the mails which the plaintiff under its contract was under obligations to do.
It should be added that it is also contended by the plaintiff that, as is shown by the findings, the Government was paying rent for this space at the time its contracts were entered into, it then being a branch of the Kansas City post office, the requirement for this additional space free of charge, after the work was put in charge of the Bailway Mail Service, was the imposition of additional service not contemplated by the contract.
As to the latter contention, it is only necessary to say that during the time a branch of the Kansas City post office was maintained at the Union Depot the findings show that both local and transit registered mails were received and distributed there. For such local service certainly the railways were not compelled under their contract to supply accom *382 modations, and hence were properly paid for the same. The question, however, here is whether the railway companies under their contract for the transportation of the mails were compelled to furnish room in the depot at Kansas City for the distributions of’registered mails in transit. In a large central station like the depot at Kansas City where many railway lines enter, each bringing mails for the same place beyond, it is unnecessary to say that unless accommodations are there furnished for the sorting and resacking of these mails, as many mail sacks as there are railway lines would be required for each important place beyond; or, as was formerly done in this case, these mails would be required to be taken to the city post office, there to be distributed. In either case probable delay and added expense would be the result.
The railway companies are under contract to “ transport ” the mails; and as an incident to this service, at stations where transfer clerks are employed, to provide accommodations for the “ handling and storing ” of these mails. It seems to us that- under these terms the railway companies are under obligation to furnish all necessary conveniences to provide for the rapid, safe, and most businesslike carriage ■of all mails placed in their care. A letter is “ in transit ” from the time it is deposited in the mail box until it reaches its destination, and the railway company after it receives it is its carrier. The Government furnishes the agents in its immediate charge, but the railway company is under contract to furnish such necessary accommodations as will enable them to secure its safe and rapid delivery. It is hardly necessary to say that one of these accommodations is a suitable room for sorting and resacking at large exchange stations like Kansas City. We think all of these accommodations and conveniences are necessarily included in the terms “ handling and storing ” as applicable to mails in transit.
For the reasons given the petition must be dismissed, and it is so ordered.
Howry, J., was not present when this case was heard and took no part in its decision.