Booth, Judge,
delivered the opinion of the court.
This case is now before us upon a motion for a new trial under section 175 of the Judicial Code. The gravamen of the motion is an allegation that in view of the absence from the record in this case of an important deposition the court may not have considered the entire record in forming its conclusions.
The facts stated in the present motion are sufficient to arrest the attention of the court. Manifestly both sides to the litigation are entitled to a consideration of the complete record, and it would be a most unusual event if such consideration was not given in view of the fact that the final decision of the court in this case overruled the opinion of the court in the case wherein the deposition appeared — Missouri Pacific Ry. Co. v. United States, 47 C. Cls., 377.
Without going into an extended discussion of the relative rights of the parties under a motion for a new trial under section 175 of the Judicial Code we believe the allowance or refusal of such a motion rests in the sound discretion of the court, and in reaching its conclusion the court is entitled to consider the record presented in support thereof. It is probably needless to add in this respect that where the court has considered a case, delivered its opinion, and subsequently considered a motion for a new trial made under the court’s rules, whereupon the defendants themselves after-wards voluntarily withdraw a motion for appeal to the Supreme Court, and the judgment is appropriated for by Congress, the burden of pointing out wrong or injustice to the United States emanating from a record complete and available at the time of the former trial rests upon the defendants, and the court will scrutinize with great care the merits of the contention before again opening up the record in the case and thus prolonging the litigation indefinitely. Axman v. United States, 47 C. Cls., 537.
*487 The deposition of Alexander Grant, the one now in issue under the present motion, was taken , in the city of Washington on November 24, 1911, and filed in this court on November 29, 1911. It was printed in the record in the Missouri Pacific By. Co. case, No. 30497, and has been available to both the attorneys of record in the case and the court for at least eight years. In this connection it is pertinent to point out that the deposition of Mr. Grant, taken by the defendants, was the only deposition of record in the Missouri Pacific By. Co. case, No. 30497, and doubtless one of the controlling factors in the conclusion reached in said case, whereas in the present case an additional deposition by the claimant puts a decidedly different aspect upon the character of the services required of the company. Considering the motion upon its merits, and to the end that justice may be done both parties, free from any possible criticism from this source, the court has again considered the entire record in both cases and reached the final conclusion that the defendants’ motion should be overruled.
The deposition complained of presents the testimony of an experienced employee of the Post Office Department; he details with accuracy what was done with reference to the classification of the respective duties of a local postmaster and those imposed upon the railroads of the country under what is technically known as railway mail service. In so far as the testimony deals with facts, aside from opinions, it in no wise alters the record in point of fact. The necessities of the department with respect to the expeditious delivery of registered mail, which in nowise involves the transportation of the same, can not be imposed upon the railway company under the form of agreement in this case. The Post Office Department may not by formulating a new scheme of handling registered mail, in order to facilitate its dispatch, call upon the plaintiff to place at its disposal free of charge, as part of Bailway Mail Service, facilities for carrying the same into execution, when such facilities are foreign to the particular postal service the railroad company engages to perform. Bailway mail service has a distinct and limited meaning in the postal service, and the establishment and maintenance of terminal *488 railway post offices wherein registered mails to all intents and purposes are treated in the identical way they are distributed in the post office service, does not bring the same within the terms of section 1186, Postal Laws and Regulations, relating to the handling and transfer of through mails at the expense of the railway company.
Quoting from the testimony of this witness, Grant, wherein he traces a registered letter mailed in Washington, D. C., addressed to a destination beyond Kansas City, Mo., we find the following:
“A registered letter originating at Washington would be put in pouch made up for the terminal railway post office at Kansas City, which is located in the Union Depot; upon arrival at Kansas City the pouch would be opened in the terminal in the depot and the contents distributed, reentered, and delivered to the clerks on outgoing trains. If the registered article were to be sent through the Kansas City post office, the Washington post office would probably make up a pouch for Kansas City, Mo., post office, which upon arrival at Kansas City would be taken to the post office in the regulation wagon or street car, there opened, and the matter distributed, entered, and either delivered to the clerks on outgoing lines or sent back to the depot to be delivered to the outgoing trains by transfer clerks there.”
What could more forcibly illustrate the distinction between railway-mail service and post-office service than the. foregoing statement? The railway company receives a pouch of registered mail addressed to the railway terminal post office at Kansas City, Mo., and transports and delivers the pouch to the proper addressee, the same as it accepts and delivers freight from the consignor to the consignee. If the Post Office Department chooses to interrupt an intended through transportation of registered mails at Kansas City, the initial point of delivery, by taking the same after it has been properly delivered to it, and by a process of its own redistribute and otherwise redirect said mails and again place them in transit, surely it can not impose that added burden upon the railway company by simply declaring a change in the system and arbitrarily transferring the service from the post office to the Railway Mail Service. The railway company has discharged its obligation when it de *489 livers the pouch as above set forth to the addressee, viz, the railway terminal post office at Kansas City. The contents of the pouch are not in transit, in so far as the company is concerned, until they are repouched, redirected, and placed aboard the cars for the final delivery. The Post Office Department maintained a position in harmony with this view, at least until the postmaster at Kansas City complained of it, and the record suggests a serious doubt by the Post Office Department as to the right to make the charge it did make in this case against the plaintiff company. It in no wise resembles a through dispatch of mails from Washington addressed to San Francisco, wherein one line of railway must in the course of transit transfer the mails to another company and thus bear the expense of furnishing suitable quarters for handling and storing the same while so in transit. This the company did without complaint.
The only possible distinction between the processes employed in a regular post office and the railway terminal post office is found in the fact that the former collects and distributes mails originating in a local community and the latter collects and distributes mails designated to it from the various railways centering at a given railway station. To say that mail is in transit' when it is in the hands of post-office clerks transferred from the local post offices to the terminal post office, the mail being made ready for transportation to the various addresses, is giving to the term an elasticity not in keeping with its usual significance.
The expense chargeable against a railway company, if compelled to furnish suitable quarters here claimed, is, as conceded by the defendants, without limit. In this instance twenty-two clerks were transferred from the Kansas City post'office to the Union Station. If the service required a hundred clerks or more the obligation would still subsist, and it is not an absurd conclusion to state that under this contention the Post Office Department could eventually take over every available room in the station, to the exclusion of the rights of others properly there. Such a fact was never within the contemplation of either party at the time the company engaged to transport mails, and was in itself such a new, novel, and extensively added service as not to fall with *490 in the general clauses of the company’s contract, which warned it as to its liability under section 1186 of the Postal Laws and Regulations.
Inasmuch as a new trial would serve no useful purpose and only tend to delay the final disposition of the case, we are firmly of the opinion that no wrong or injustice has been done the United States. The motion will be overruled. It is so ordered.
Graham, Judge; Hat, Judge; DowNet, Judge; and Campbele, Ghief Justice, concur.